UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NAOMI SUE WHITE EAGLE,<br><br>　　　　　　　Plaintiff,<br>　v.<br>J MICHAELIS et al.,<br><br>　　　　　　　Defendants. | Case No. 22-cv-5410-BHS-TLF<br><br>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 25) AND ORDER DENYING PLAINTIFF'S MOTION FOR EXTENSION (DKT. 32)<br><br>Noted for January 19, 2024 |

This matter is before the Court on Defendants' Brandon Duncan and Melisa Holdway's filing of a motion for summary judgment. Dkt. 25. This matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned recommends the Court GRANT Defendants' motion for summary judgment. Dkt. 25. Further, Plaintiff's motion for extension of time is denied. Dkt. 32.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff is currently an inmate at Twin Rivers, Monroe Correctional Complex. Dkt. 40, 41. At the time Plaintiff filed her complaint, she was confined at Airway Heights Corrections Center. Dkt. 9 (Amended Complaint).

Plaintiff first alleges that Defendant Holdway violated her Eighth Amendment rights by not providing her with treatment for her stomach and bowel issues. Dkt. 9 at p.

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DKT. 25) AND ORDER DENYING PLAINTIFF'S
MOTION FOR EXTENSION (DKT. 32) - 1

5. Plaintiff states that Defendant Holdway, a Psychology Associate with the Department of Corrections, was responsible for the lack of medical treatment and acted with deliberate indifference when she responded to Plaintiff's December 27, 2021, kite, informing Plaintiff that she "had no concerns." *See id.* Plaintiff, in her kite, expressed concerns that if she were found to be mentally unstable, she may not qualify for gender reaffirming surgery. *See* Dkt. 9 at p. 17. The kite did not mention her stomach or bowel issues. Further, Defendants have produced evidence that Ms. Holdway is a mental health provider and does not prescribe, assign, or schedule medical treatments or appointments. *See* Dkt. 27 (Declaration of Melisa Holdway, MA, LMHC) at ¶2,6. Plaintiff has not contested that Ms. Holdway lacked the professional credentials to provide the stomach or bowel treatment Plaintiff has identified.

      Plaintiff further alleges that when Ms. Holdway offered to provide recreational materials for her patients during COVID-19 quarantine, she violated Plaintiff's constitutional rights because Ms. Holdway's offer did not constitute proper medical treatment. Dkt. 9 at p. 6. Ms. Holdway states that she offered materials like journals, psychoeducational materials, puzzles games, and other relaxation materials to a majority of her patients who experienced a restriction of movement during the COVID-19 response. *See* Dkt. 27 at ¶9.

      In Count II of her complaint, Plaintiff claims that Defendant Holdway violated the constitution by rescheduling her H. Pylori testing and colonoscopies. Dkt. 9 at p. 9. Yet, the Defendants have produced evidence that the letter informing Plaintiff that her scheduled colonoscopy was canceled because her living unit was on quarantine status

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DKT. 25) AND ORDER DENYING PLAINTIFF'S
MOTION FOR EXTENSION (DKT. 32) - 2

was sent by non-defendant Don McIntryre, a health service manager (not by Ms. Holdway). Dkt. 9 at p. 36.

Plaintiff further alleges that Defendants have undisclosed "flawed and misstated documents" relating to her medical records. Plaintiff appears to claim that one of those "flaws" in her medical records was that it indicated that she was prescribed antibiotics with refills for her "medical needs/problems," even though she was provided a limited supply of antibiotics. *See* Dkt. 9 at p. 11-12. Plaintiff did not identify any defendant by name.

Finally, Plaintiff briefly states that she suffers from gender dysphoria and expressed concerns regarding the delay in her gender affirming surgery. Dkt. 9 at p. 8. Plaintiff did not allege a separate claim based on Defendants' failure to treat her gender dysphoria or failure to provide her with sexual reassignment surgery ("SRS")[1]. Therefore, the Court will not address it as a separate claim for the purposes of the instant motion.

## DISCUSSION

**I.     Plaintiff's Motion for Extension of Time**

On November 9, 2023, Plaintiff filed a motion for extension of time to respond to Defendants' motion for summary judgment. Dkt. 32. The Court ordered the Defendants "to show cause, in their response to Plaintiff's motion, and specifically address Plaintiff's

---

[1] Plaintiff filed a "Supplemental Motion/Additional Grounds", in which Plaintiff alleges that Defendants have ignored her requests and need for an SRS. Dkt. 17. The Court struck Docket 17 because it was not properly submitted under the Federal Rules of Civil Procedure or the Local Rules. The Court further denied Plaintiff's motion for preliminary injunction seeking an order from the Court to schedule her SRS surgery immediately because this relief was unrelated to the claims in her complaint. Dkt. 30 (Report and Recommendation Denying Plaintiff's Motion for Preliminary Injunction), Dkt. 31 (Order Adopting Report and Recommendation).

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DKT. 25) AND ORDER DENYING PLAINTIFF'S
MOTION FOR EXTENSION (DKT. 32) - 3

current custody status and whether Plaintiff is in fact in a unit where she is unable to access her legal materials and the law library, or if there has been a delay in Plaintiff's acquisition of legal materials because of another situation." Dkt. 34.

The Defendants state that Plaintiff has resided in the Special Management Unit ("SMU"), a unit that provides segregated housing for incarcerated individuals, since August 21, 2023. Dkt. 36. Defendants state that incarcerated individuals, including Plaintiff, have access to their personal legal materials in their property for pending cases. The Defendants state that Plaintiff currently has her legal materials and access to a tablet computer, and while she is not permitted to physically go to the law library, she can send kites to the law library and request books, mail services, and electronic filing services. *See id.*

Plaintiff states that she hopes -- if the Court grants her extension request and she is given an additional 60 days to respond -- she will be released from the SMU and would be able to consult with jailhouse lawyers. Plaintiff has had ample opportunity to respond to Defendants' summary judgment motion -- and her extension request was filed after her response would have been due; moreover, she has had access to her legal materials and legal resources since August – therefore, Plaintiff has not demonstrated good cause for this additional extension. Plaintiff's motion is therefore DENIED and the Court will proceed with the current record.

II.     **Defendant's Summary Judgment Motion**

   A.   Summary Judgment Standard

Summary judgment is supported "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DKT. 25) AND ORDER DENYING PLAINTIFF'S
MOTION FOR EXTENSION (DKT. 32) - 4

material fact and that the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure (FRCP) 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine dispute of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A genuine dispute concerning a material fact is presented when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id.,* at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Anderson v. Liberty Lobby, Inc.*, at 255. If the moving party meets their initial burden, an adverse party may not rest upon the mere allegations or denials of his pleading; his or her response, by affidavits or as otherwise provided in FRCP 56, must set forth specific facts showing there is a genuine issue for trial. FRCP 56(e)(2). The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

In response to the motion for summary judgment, the nonmoving party is required to present specific facts, and cannot rely on conclusory allegations. *Hansen v. U.S.,* 7 F.3d 137, 138 (9th Cir. 1993). The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed

1  context and background facts, would show that a rational or reasonable jury might
2  return a verdict in the non-moving party's favor based on that evidence. *Emeldi v.*
3  *University of Oregon,* 698 F.3d 715, 728-29 (9th Cir. 2012).
4     B.  42 U.S.C. § 1983
5        To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the
6  conduct complained of was committed by a person acting under color of state law, and
7  (b) the conduct deprived a person of a right, privilege, or immunity secured by the
8  Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535
9  (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section
10  1983 is the appropriate avenue to remedy an alleged wrong only if both of these
11  elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).
12        To state a claim for cruel and unusual punishment in relation to medical care
13  under the Eighth Amendment, a plaintiff must show that a state actor acted with
14  deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97,
15  104 (1976).  Deliberate indifference includes denial, delay or intentional interference
16  with a prisoner's medical treatment. *Id*. at 104–5; *see also Broughton v. Cutter Labs*.,
17  622 F.2d 458, 459–60 (9th Cir.1980).  To succeed on a deliberate indifference claim, an
18  inmate must demonstrate that the prison official had a sufficiently culpable state of
19  mind. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994).  A determination of deliberate
20  indifference involves an examination of two elements: the seriousness of the prisoner's
21  medical need and the nature of the defendant's response to that need. *McGuckin v.*
22  *Smith*, 974 F.2d 1050, 1059 (9th Cir.1992).

First, the alleged deprivation must be, objectively, "sufficiently serious." *Farmer*, 511 U.S. at 834. A "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32–35 (1993); *McGuckin*, 974 F.2d at 1059. Second, the prison official must be deliberately indifferent to the risk of harm to the inmate. *Farmer*, 511 U.S. at 834. An official is deliberately indifferent to a serious medical need if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. at 837. In assessing whether the official acted with deliberate indifference, a court's inquiry must focus on what the prison official actually perceived, not what the official should have known. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir.1995).

Deliberate indifference requires more culpability than ordinary lack of due care for a prisoner's health or medical malpractice. *Farmer*, 511 U.S. at 835. A plaintiff must show a chosen course of treatment was medically unacceptable under the circumstances and that this course was chosen in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). This requires more than a difference of opinion between the prisoner-patient and prison medical authorities regarding treatment. *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

To obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977).

C. Qualified Immunity

Unless Plaintiff makes a two-part showing, qualified immunity shields government officials from liability. The Plaintiff must show both: the official(s) violated a federal statutory or constitutional right, and – at the time of the alleged act or failure to act there was clearly established law that defined the contours of the federal right objectively putting the official(s) on notice – i.e., every reasonable official would understand that what they are doing is unlawful. *Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 583 U.S. 48, 63 (2018).

When qualified immunity is reviewed in the context of a defense motion for summary judgment, the evidence must be considered in the light most favorable to the plaintiff with respect to central facts. *Tolan v. Cotton,* 572 U.S. 650, 657 (2014) (per curiam). If there is a genuine issue of material fact concerning both -- (1) whether it would be clear to a reasonable officer their conduct was unlawful under the circumstances, and (2) whether the defendant's conduct violated a constitutional right -- then summary judgment granting qualified immunity is not appropriate. *Bonivert v. City of Clarkston,* 883 F.3d 865, 871-72 (9th Cir. 2018).

To determine whether there was clearly established law, the Court has stated, "[w]hile there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate"; and the Court has also observed, "there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, at 64. A clearly established right exists if "controlling authority or a robust consensus of cases of persuasive authority" have held, on facts that are

close or analogous to the current case, that such a right exists. *Hines v. Youseff,* 914 F.3d 1218, 1229 (9th Cir. 2019).

In some contexts, general constitutional rules identified in previous court decisions may apply with such obvious clarity to the specific conduct of a defendant, that qualified immunity will not apply even though existing case law did not hold the specific action in question unlawful. *United States v. Lanier,* 520 U.S. 259, 271 (1997); *Bonivert,* 883 F.3d at 872-73. If qualified immunity operated as a shield for all conduct not specifically addressed in existing case law at the time of the event in question, officials would never be held accountable for unprecedented constitutional violations that would appear obvious. *Hope v. Pelzer,* 536 U.S. 730, 740-42 (2002) (finding that a correctional officer's act of handcuffing an inmate to a hitching post in a painful position under dangerous and degrading circumstances was "antithetical to human dignity" and so obviously wanton, painful and cruel under the Eighth Amendment that the officer had fair notice that this was unlawful under existing legal precedent).

### D. Claims Against Defendant Brandon Duncan

Plaintiff named Brandon Duncan, a resolution specialist with the Department of Corrections, as a defendant in this matter, but failed to make any factual allegations against him. *See* Dkt. 9. There is no evidence that Mr. Duncan personally participated in any of the acts or omissions alleged by Plaintiff. *See* Dkt. 26 (Declaration of Brandon Duncan) at ¶6 ("I have had no involvement whatsoever with anything in Ms. White Eagle's complaint in this matter or with processing any grievances related to her medical care."). Accordingly, the undersigned recommends that Mr. Duncan should be dismissed from this action.

### E. Plaintiff's Eighth Amendment Claims Against Defendant Holdway

Plaintiff alleges that Defendant Holdway violated her Eighth Amendment rights by failing to treat her stomach and bowel issues, canceling her H. Pylori and colonoscopy appointments, and providing an insufficient supply of antibiotics.

Plaintiff has failed to put forth any evidence to support a genuine issue of material fact regarding whether Defendant Holdway had any personal participation in these issues. Although Plaintiff was a patient of Defendant Holdway, Defendant Holdway was not in the position of a medical provider. She was, rather, a psychology associate. Plaintiff's Amended Complaint identifies Ms. Holdway as a psychology associate. Dkt. 9 at 3.

As a mental health provider, Defendant Holdway did not prescribe, assign or schedule medical treatments or appointments; Defendant Holdway did offer to provide recreational materials for her patients, including Plaintiff, during COVID-19 quarantine, but this was not offered as a form of medical treatment. *See* Dkt. 27 at ¶9.

Consequently, she would not have been responsible for treating Plaintiff's bowel and stomach issues (even *if* the December 2021 kite referenced these issues, which it did not), for canceling her medical appointments, or for prescribing her an insufficient supply of antibiotics.

Because deliberate indifference under the Eighth Amendment requires actual knowledge of an excessive risk, a defendant can only be liable if the defendant personally participated in the alleged constitutional violation. *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(DKT. 25) AND ORDER DENYING PLAINTIFF'S
MOTION FOR EXTENSION (DKT. 32) - 10

alleged rights deprivation ..."); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). Plaintiff, here, has failed to show personal participation by Ms. Holdway regarding Plaintiff's Eighth Amendment claims. Therefore, Plaintiff's claims for "punitive, injunctive, compensatory damages", and for "proper care – surgery within 4-5 months" should be dismissed with prejudice.

F.  Defendants are Entitled to Qualified Immunity

Unless Plaintiff makes a two-part showing, qualified immunity shields government officials sued in their individual capacity from liability for damages. The plaintiff must show both: the official(s) violated a federal statutory or constitutional right, and – at the time of the alleged act or failure to act there was clearly established law that defined the contours of the federal right objectively putting the official(s) on notice – i.e., any reasonable official in the defendant's shoes would understand that what they are doing is unlawful. *City of Escondido v. Emmons,* 139 S.Ct. 500, 503 (2019); *District of Columbia v. Wesby,* 138 S.Ct. 577, 589 (2018).

Here, Plaintiff has failed to present sufficient evidence of a constitutional violation by Defendants. As discussed above, Plaintiff did not submit any evidence to show that Defendants personally participated in any of the allegations. Thus, the Court should find that Defendants are entitled to qualified immunity regarding Plaintiff's §1983 claims for damages.

CONCLUSION

Based on the foregoing discussion, the undersigned denies Plaintiff's motion for extension of time and recommends the Court GRANT Defendants' motion for summary

judgment and dismiss Plaintiff's complaint with prejudice as to Defendants Holdway and Duncan. A proposed order is attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **January 19, 2024**, as noted in the caption.

Dated this 3rd day of January, 2024.

Theresa L. Fricke
United States Magistrate Judge